## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| iROBOT CORPORATION,     ) | |
| ) | |
| Plaintiff     ) | |
| ) | |
| v.     ) | |
| ) | Civil Action No. |
| SHARKNINJA OPERATING LLC,     ) | |
| SHARKNINJA MANAGEMENT LLC,     ) | **JURY TRIAL DEMANDED** |
| SHARKNINJA MANAGEMENT CO.,     ) | |
| SHARKNINJA SALES CO., EP MIDCO     ) | |
| LLC     ) | |
| ) | |
| Defendants.     ) | |

## COMPLAINT

Plaintiff iRobot Corporation ("iRobot" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendants SharkNinja Operating LLC, SharkNinja Management LLC, SharkNinja Management Company, SharkNinja Sales Company, and EP Midco (collectively, "Shark" or "Defendants"), hereby alleges as follows.

## NATURE OF THE ACTION

1.     This is an action arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq.* to end Defendants' unauthorized and infringing importation, offer for sale, sale, distribution, and/or use of products incorporating Plaintiff iRobot's patented inventions.

2.     Under the Patent Act, iRobot seeks to enjoin infringement and obtain damages resulting from Defendants' unauthorized manufacture, use, sale, and/or offer to sell within the United States and/or importation into the United States of products that infringe one or more claims of United States Patent Nos. 7,571,511 ("the '511 patent"), 9,884,423 ("the '423 patent"), 10,296,007 ("the '007 patent"), 10,813,517 ("the '517 patent"), and 10,835,096 ("the '096 patent"), (collectively, "the patents-in-suit").  iRobot seeks permanent injunctive relief to prevent

Defendants from continuing to infringe the patents-in-suit.  In addition, iRobot seeks monetary damages, including treble damages, resulting from Defendants' direct, indirect, and willful infringement of the patents-in-suit.

3.      This action is related to Plaintiff iRobot's recently filed complaint in the International Trade Commission (ITC) pursuant to 19 U.S.C. § 1337(d).  iRobot has filed the present Complaint in this Court as a companion proceeding to the ITC case in accordance with customary ITC practice, given that this Court has authority to afford relief such as money damages that the ITC does not.   As such, and as is also customary, this action could be stayed without opposition by iRobot pending the completion of the ITC action upon a proper and timely request by the Defendants in this action (all of whom are proposed Respondents in the ITC complaint).  *See* 28 U.S.C. § 1659(a).

4.      Defendants import, offer for sale, sell, distribute, and/or use in the United States infringing products ("Accused Products"), and encourage others to use the Accused Products in an infringing manner.  The Accused Products consist of Shark's ION-series, IQ-series, and AI-series robotic floor cleaners ("RFCs").  The IQ-series has two primary variants: the standard IQ Robot ("IQ") and an auto-empty version ("IQ-AE").  The AI-series has two primary variants:  the standard AI Robot ("AI") and a "wet-dry" version that also has mopping capability ("AI-WD").

## PARTIES

5.      Plaintiff iRobot Corporation is a corporation organized under the laws of the State of Delaware and has its principal place of business at 8 Crosby Drive, Bedford, MA 01730.

6.      On information and belief, Defendant SharkNinja Operating LLC is a limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham, MA 02494.

7.      On information and belief, Defendant SharkNinja Management LLC is a limited liability company duly organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham MA 02494.

8.      On information and belief, Defendant SharkNinja Management Company is a company duly organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham MA 02494.

9.      On information and belief, Defendant SharkNinja Sales Company is a company duly organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham MA 02494.

10.      On information and belief, Defendant EP Midco LLC is a limited liability company duly organized and existing under the laws of the State of Delaware and has its principal place of business at 89 A Street, Suite 100, Needham MA 02494.

<u>JURISDICTION AND VENUE</u>

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.      Defendants are subject to personal jurisdiction in this district because Defendants have their principal place of business in this district.  Further, Defendants regularly transact business in this district by, among other things, making, using, selling, or offering to sell products to customers located in this district.

13.      Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because, Defendants have committed acts of infringement and have a regular and established place of business in this district.

## FACTUAL BACKGROUND

14.     iRobot's passion for innovation has been unflagging since its founding three decades ago.  In 1990, three engineers from the Massachusetts Institute of Technology's Artificial Intelligence Lab founded iRobot (formerly IS Robotics, Inc.).  In its early years, iRobot principally researched and developed robotic technologies for security, exploration, environmental, and military applications.  Its creations made history.  iRobot's first product, a six-legged robot designed for space exploration, now resides at the Smithsonian Air & Space Museum in Washington, D.C.  Its other early robots explored the Great Pyramid of Giza, discovered harmful subsea oil in the Gulf of Mexico, and were the first self-navigating FDA-approved remote presence robots for hospitals.

15.     In the early 2000s, iRobot turned its attention to improving consumer electronics, including by launching its revolutionary Roomba® RFCs, forging a path for an entirely new category in home cleaning.  Since then, iRobot has become the undisputed leader in the domestic RFC market segment, and its products have won widespread applause.  To date, iRobot has sold more than 30 million home robots worldwide.  In May 2020, Popular Mechanics recognized the Roomba® i7 as the "Best Robot Vacuum."  Ex. 8.  In September 2020, Vacuum Wars named the Roomba® 675 as a winner in the "Budget Robots Category," and named the Roomba® i7+ as a winner in the "Premium Robot Category."  Ex. 9.  Those and other iRobot RFCs have earned dozens more "Editor's Choice," "Reader's Choice," and "Best of" accolades over the past several years, including, in 2018, Time's Invention of the Year for the Roomba® i7+.  Ex. 6; *see also* Exs. 7-10.

16.     iRobot's groundbreaking technologies are key to its leadership of the market segment.  Owners of iRobot RFCs spend less time cleaning by hand themselves, or even thinking about cleaning.  Certain iRobot RFCs can autonomously create a map of the floor of a home,

identify where they are on the map during cleaning missions, and let owners review the maps and customize them for optimal cleaning.



17.     Some iRobot RFCs augment these functionalities by allowing users to select particular rooms, zones, or hot spots for cleaning (for example, under the dining table).



18.     When certain iRobot RFCs sense a need to recharge during a cleaning mission, they can navigate to a docking station in the home to recharge, then resume the mission—all without the need for human intervention.




19.     During cleaning missions, iRobot RFCs also use various detectors that enhance the intelligence and safety of their cleaning, including by treating carpets differently, avoiding falling down stairs, and navigating around obstacles.




20.     iRobot's patented technology also includes side brushes on the underside of the robots that help sweep dust and debris from hard-to-reach areas, such as corners and along the edges of walls.



21.     iRobot researches, designs, develops, and engineers its RFCs primarily in Bedford, Massachusetts and Pasadena, California.  It employs more than 1,200 people worldwide, most of whom work in this country, and it paid its domestic engineering, research, and technology employees tens of millions of dollars each of the past several years.  Over the past few years, iRobot has also spent tens of millions of dollars on both occupancy expenses for its domestic research facilities and domestic research-and-development capital costs.

22.     In addition to inventing trailblazing robotic technologies, iRobot contributes to the advancement of the next generation of scientists through its commitment to Science, Technology, Engineering, and Math (STEM) education in the United States.  iRobot offers free coding and STEM tutorials for educators; professional-development and STEM programming; affordable code-able robots; job shadowing; and virtual classrooms, college panels, and museum tours. iRobot's STEM initiatives have reached hundreds of thousands of students, parents, and educators to date.

23.     iRobot's innovation was well known, and Shark knew iRobot's RFCs were patented but chose to incorporate iRobot's patented features into the Accused Products anyway. Because Shark produces lower-quality imitations of iRobot's RFCs, Shark can invest less in research and development and sell its products at lower prices.  Shark used that strategy in 2017 when it first entered the RFC segment with the launch of its infringing ION robot, quickly

surpassing others to become the second-largest domestic player by taking segment share from iRobot. Shark did not try to hide its copying along the way, directly targeting iRobot and claiming to offer technology similar to iRobot's at "half the price of iRobot i7+." Ex. 11. And consumers picked up on Shark's strategy. The first person to review an infringing Shark IQ Robot on Amazon warned that "This sad robot is just a copy of the room[b]a i7+ and … there could be a law suit soon." Ex. 40.

24.     The Accused Products include Shark's ION, IQ, IQ auto-empty (IQ-AE), AI, and AI wet/dry VacMop (AI-WD) robotic floor cleaners. A representative image of each is below. Exhibits 12-16 detail how representative models of these products infringe the Asserted Patents.



25.     Some Shark RFCs imitate iRobot's products and employ iRobot's patented technology to map the floor of a house.

8

 

26.    Certain Shark RFCs can also perform targeted cleanings, mimicking iRobot's patented technology.



27.    Some Shark RFCs exploit iRobot's patented technology for enabling RFCs to find their base to recharge, and even possibly resume cleaning without human intervention.




28.     Like iRobot's patented RFCs, certain Shark RFCs sense and avoid cliffs and treat carpets differently than hard floors.




29.     And Shark's RFCs use side brushes to clean hard-to-reach areas, including corners and along the edges of walls—just like iRobot's patented products.




30.     Defendants provide the following materials, including demonstrations, training, guides, videos, websites, and/or manuals, regarding the Shark ION, IQ, IQ-AE AI, and AI-WD Robot:

Shark     ION     Robot     Vacuum     Owner's     Guide     found     at https://www.sharkclean.com/include/pdf/manual-rv750_n.pdf (Ex. 24);

Shark     ION     Robot     Vacuum     Quick     Start     Guide     found     at https://www.sharkclean.com/include/pdf/qsg-rv750_n.pdf (Ex. 21);

Shark     IQ     Robot     Vacuum     Owner's     Guide     found     at https://www.sharkclean.com/include/pdf/manual-RV1000.pdf (Ex. 28);

Shark     IQ     Robot     Vacuum     Quick     Start     Guide     found     at https://www.sharkclean.com/include/pdf/qsg-RV1000.pdf (Ex. 32);

Shark     IQ     Robot     Self-Empty     Vacuum     Owner's     Guide     found     at https://www.sharkclean.com/include/pdf/manual-rv1001ae.pdf (Ex. 17);

Shark     IQ     Robot     Self-Empty     Vacuum     Quick     Start     Guide     found     at https://www.sharkclean.com/include/pdf/qsg-rv1001ae.pdf (Ex. 18);

Shark     AI     Robot     Vacuum     Owner's     Guide     found     at https://www.sharkclean.com/include/pdf/manual-rv2001.pdf (Ex. 19);

Shark     AI     Robot     Vacuum     Quick     Start     Guide     found     at https://www.sharkclean.com/include/pdf/qsg-rv2001.pdf   (Ex. 20);

Shark     AI     Robot     VacMop     Owner's     Guide     found     at https://www.sharkclean.com/include/pdf/manual-rv2000wd.pdf (Ex. 34);

Shark     AI     Robot     VacMop     Quick     Start     Guide     found     at https://www.sharkclean.com/include/pdf/qsg-rv2001wd.pdf (Ex. 27);

Webpage found at https://www.sharkclean.com/vacuums/robot-vacuums (Ex. 23);

Webpage                         found                         at https://www.amazon.com/gp/product/B075JRB2Z9/ref=ppx_yo_dt_b_asin_image_o07_s 00?ie=UTF8&psc=1 (Ex. 22);

Webpage  found  at  https://direct.sharkclean.com/16/products/shark-iq-robot-self-empty-vacuum-rv1001ae/18/microsite/ogix/?opt=2 (Ex. 11);

Webpage found at https://www.sharkclean.com/exclusive-offer/RV2001WBKT/shark-ai-robot-vacuum-with-ai-laser-visionss-self-cleaning-brushrolli-wi-fi/ (Ex. 42);

Webpage found at https://www.sharkclean.com/exclusive-offer/RV2001WDWK/shark-ai-robot-vacmop-pro-r201wd-with-sonic-mopping-self-cleaning-brushroll-wi-fi/ (Ex. 33);

Webpage found at https://www.sharkclean.com/support/product-series/1221/shark-ion-robot-vacuum-r76-with-wi-fi/robot-how-works/#faq-3154 (Ex. 26);

Webpage found at https://www.sharkclean.com/support/product-series/1238/shark-ai-robot-vacmop-pro-r201wd-with-sonic-mopping-self-cleaning-brushroll-and-wi-fi/ (Ex. 37);

Webpage found at https://www.sharkclean.com/support/product-series/1238/shark-ai-robot-vacmop-pro-r201wd-with-sonic-mopping-self-cleaning-brushroll-and-wi-fi/robot-app-setup/#faq-2227 (Ex. 38);

Video found at https://www.amazon.com/gp/product/B075JRB2Z9/ref=ppx_yo_dt_b_asin_image_o07_s00?ie=UTF8&psc=1 (Ex. 25);

Video found at https://www.youtube.com/watch?v=yGsrp7m8P9U (Ex. 30);

Video found at https://www.youtube.com/watch?v=KpdpSHp07cs (Ex. 35);

Video found at https://www.youtube.com/watch?v=xTsUmDI6tSU&list=PLO-s5C_my0mWb0wLLOoPepSVjbxHkt5-b&index=4 (Ex. 36);

Video found at https://www.youtube.com/watch?v=m8G-BYk6Iik (Ex. 39).

## U.S. PATENT NO. 7,571,511

31.    The U.S. Patent and Trademark Office issued the '511 patent, entitled "Autonomous Floor Cleaning Robot," on August 11, 2009.  A true and correct copy of the '511 patent is attached as Exhibit 1.

32.    iRobot has owned the '511 patent throughout the period of Defendants' infringing acts and still owns the '511 patent.

### U.S. PATENT NO. 9,884,423

33.     The U.S. Patent and Trademark Office issued the '423 patent, entitled "Autonomous Robot Auto-Docking And Energy Management Systems and Methods," on February 6, 2018.  A true and correct copy of the '423 patent is attached as Exhibit 2.

34.     iRobot has owned the '423 patent throughout the period of Defendants' infringing acts and still owns the '423 patent.

### U.S. PATENT NO. 10,296,007

35.     The U.S. Patent and Trademark Office issued the '007 patent, entitled "Mobile Robot Area Cleaning," on May 21, 2019.  A true and correct copy of the '007 patent is attached as Exhibit 3.

36.     iRobot has owned the '007 patent throughout the period of Defendants' infringing acts and still owns the '007 patent.

### U.S. PATENT NO. 10,813,517

37.     The U.S. Patent and Trademark Office issued the '517 patent, entitled "Navigational Control System for a Robotic Device," on October 27, 2020.  A true and correct copy of the '517 patent is attached as Exhibit 4.

38.     iRobot has owned the '517 patent throughout the period of Defendants' infringing acts and still owns the '517 patent.

### U.S. PATENT NO. 10,835,096

39.     The U.S. Patent and Trademark Office issued the '096 patent, entitled "Map Based Training and Interface for Mobile Robots," on November 17, 2020.  A true and correct copy of the '096 patent is attached as Exhibit 5.

40.     iRobot has owned the '096 patent throughout the period of Defendants' infringing acts and still owns the '096 patent.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 7,571,511

41.     iRobot incorporates the foregoing Paragraphs 1-32 by reference as though fully set forth herein.

42.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 8-12, 14, 16, 18, 19, 22-25, 32-34, 36-37, 55, 56, and 62 of the '511 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark ION, IQ, IQ-AE, AI and AI-WD Robot product lines.

43.      Exhibit 12 attached hereto compares Defendants' Shark ION Robot to claims 1, 24, and 55 of the '511 patent.  On information and belief, Defendants produce additional robotic floor cleaners, including Shark IQ, IQ-AE, AI, and AI-WD Robot product lines, which infringe for reasons similar to to those shown in Exhibit 12, including claims 1, 24, and 55.

44.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '511 patent, including claims 1, 24, and 55, in violation of 35 U.S.C. § 271(b) and Defendants continue to infringe even today.

45.     In developing their products, including at least Defendants' Shark ION Robot product line, Defendants emulated and copied features of iRobot's robotic floor cleaning products, and upon information and belief, including those features claimed by the '511 patent.

46.     Defendants knew that iRobot had patents covering its robotic floor cleaning product lines.  Shark has previously admitted to monitoring the issuance of iRobot patents (*see e.g.*, Transcript of Markman Hearing, iRobot Corp. v. SharkNinja Operating, 19-cv-12125, at 24:21), and, upon information and belief, either learned of the '511 patent or subjectively believed there

was a high probability that iRobot had patents covering features of its robotic floor cleaning products but took deliberate actions to avoid learning of that fact and which features were patented.

47.     Despite knowing of the '511 patent or being willfully blind to the '511 patent, Defendants continued to make, use, sell, offer to sell, and/or import infringing products.

48.     Defendants have been and are continuing to encourage other persons (*e.g.*, distributors, manufacturers, customers, and end users) to directly infringe the '511 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products, including the Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines. These other persons directly infringe the '511 patent.

49.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and describe the infringing features of the Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines (Exs. 17-28; 30; 32-39; 42).

50.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '511 patent unless the court permanently enjoins Defendants from their activities. iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '511 patent.

51.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '511 patent.

### COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,884,423

52.     iRobot incorporates the foregoing Paragraphs 1-30 and 33-34 by reference as though fully set forth herein.

53.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 13-15, 18-23, and 25-26 of the '423 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines.

54.     Further, Defendants have been using their robotic cleaners, including Shark ION and IQ Robots, in tests and demonstrations in the United States, and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1-4, 6-9, 12-15, 18-23, and 25-26 of the '423 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark ION, IQ, and IQ-AE Robot product lines.

55.      Exhibit 13 attached hereto compares Defendants' Shark IQ Robot to claims 1, 13, and 21 of the '423 patent. On information and belief, Defendants produce additional robotic floor cleaners, including Shark ION, IQ-AE, AI, and AI-WD Robot product lines that infringe certain claims of the '423 patent, including claim 1.

56.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '423 patent, including claims 1, 13, and 21, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

57.     In developing their products, including at least Defendants' Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines, Defendants emulated and copied features of iRobot's robotic floor cleaning products, and upon information and belief,  including those features claimed by the '423 patent. Use of such products along with Defendants' instructions, infringe the '423 patent.

58.     Defendants knew that iRobot had patents covering its robotic floor cleaning product lines. Shark has previously admitted to monitoring the issuance of iRobot patents (*see e.g.*, Transcript of Markman Hearing, iRobot Corp. v. SharkNinja Operating, 19-cv-12125, at 24:21), and, upon information and belief, either learned of the '423 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic floor cleaning products but took deliberate actions to avoid learning of that fact and which features were patented.

59.     Despite knowing of the '423 patent or being willfully blind to the '423 patent, Defendants continued to make, use, sell, offer to sell, and/or import infringing products and products capable of infringing.

60.     Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '423 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' products including the Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines, in a way that infringes the '423 patent.  These other persons directly infringe the '423 patent.

61.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals that depict and describe the infringing features of the Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines (Exs. 17-28; 30; 32-39; 42).

62.     Use of the Shark ION, IQ, IQ-AE, AI, and AI-WD Robot product lines, in the manner depicted and described in the materials noted in the preceding paragraph infringes the '423 patent.

63.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '423 patent unless the court permanently enjoins Defendants from their activities.   iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '423 patent.

64.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '423 patent.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 10,296,007

65.     iRobot incorporates the foregoing Paragraphs 1-30 and 35-36 by reference as though fully set forth herein.

66.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark AI-WD Robot product line and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 5, 6, 10, 12, and 13 of the '007 patent under 35 U.S.C. § 271. Defendants' infringing products include the Shark AI-WD Robot product line.

67.     Exhibit 14 attached hereto compares Defendants' Shark AI Robot to claim 1 of the '007 patent.

68.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '007 patent, including claim 1, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

69.     In developing their products, including at least Defendants' Shark AI-WD Robot product line, Defendants emulated and copied features of iRobot's robotic floor cleaning products, and upon information and belief, including those features claimed by the '007 patent.

70.     Defendants knew that iRobot had patents covering its robotic floor cleaning product lines, and upon information and belief, either learned of the '007 patent or subjectively believed

there was a high probability that iRobot had patents covering features of its robotic floor cleaning products but took deliberate actions to avoid learning of that fact and which features were patented. Shark has previously admitted that it monitors the issuance of iRobot patents (*see e.g.*, Transcript of Markman Hearing, iRobot Corp. v. SharkNinja Operating, 19-cv-12125, at 24:21). Furthermore, Shark knew specifically about the '007 patent by at least the time it began preparations to file an *inter partes* review petition on the '007 patent (IPR2020-01639).

71.     Despite knowing of the '007 patent or being willfully blind to the '007 patent, Defendants continued to make, use, sell, offer to sell, and/or import infringing products.

72.     Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '007 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products including the Shark AI-WD Robot product line.  These other persons directly infringe the '007 patent.

73.     Defendants provide their customers and the public with materials including demonstrations, training, guides, videos, websites, and/or manuals that depict and describe the infringing features of the Shark AI-WD Robot (Exs. 33-39).

74.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '007 patent unless the court permanently enjoins Defendants from their activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '007 patent.

75.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '007 patent.

## COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 10,813,517

76.     iRobot incorporates the foregoing Paragraphs 1-30 and 37-38 by reference as though fully set forth herein.

77.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark AI-WD Robot product line and are infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 3, 4, 9, and 10 of the '517 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark AI-WD Robot product line.

78.      Exhibit 15 attached hereto compares Defendants' Shark AI-WD Robot to claims 1 and 4 of the '517 patent.

79.     In addition to their direct infringement, Defendants have actively induced others to infringe claims of the '517 patent, including claims 1 and 4, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

80.     In developing their products, including at least Defendants' Shark AI-WD Robot product line, Defendants emulated and copied features of iRobot's robotic floor cleaning products, and upon information and belief, including those features claimed by the '517 patent.

81.     Defendants knew that iRobot had patents covering its robotic floor cleaning product lines. Shark has previously admitted to monitoring the issuance of iRobot patents (*see e.g.*, Transcript of Markman Hearing, iRobot Corp. v. SharkNinja Operating, 19-cv-12125, at 24:21), and upon information and belief, either learned of the '517 patent or subjectively believed there was a high probability that iRobot had patents covering features of its robotic floor cleaning products but took deliberate actions to avoid learning of that fact and which features were patented.

82.     Despite knowing of the '517 patent or being willfully blind to the '517 patent, Defendants continued to make, use, sell, offer to sell, and/or import infringing products.

83.     Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '517 patent with knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using infringing features in Defendants' infringing products including the Shark AI-WD Robot.  These other persons directly infringe the '517 patent.

84.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals that depict and describe the infringing features of the Shark AI-WD Robot (Exs. 33-39).

85.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '517 patent unless the court permanently enjoins Defendants from their activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '517 patent.

86.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '517 patent.

## COUNT V - INFRINGEMENT OF U.S. PATENT NO. 10,835,096

87.     iRobot incorporates the foregoing Paragraphs 1-30 and 39-40 by reference as though fully set forth herein.

88.     Defendants have been making, using, selling, or offering to sell within the United States and/or importing into the United States their Shark AI-WD Robot product line and are indirectly infringing, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 14, 16-19, 21-23, 25, and 26 of the '096 patent under 35 U.S.C. § 271.  Defendants' infringing products include the Shark AI-WD Robot product line.

89.     Further, on information and belief, Defendants have been using their robotic cleaners, including Shark AI-WD Robot, in tests and demonstrations in the United States, and are

infringing, directly and/or indirectly, with willfulness or willful blindness, either literally and/or under the doctrine of equivalents at least claims 1, 3-6, 8-10, and 12-13 of the '096 patent under 35 U.S.C. § 271. Defendants' infringing products include the Shark AI-WD Robot product line.

90.   Exhibit 16 attached hereto compares Defendants' Shark AI-WD Robot and features available therein to claims 1 and 14 of the '096 patent.

91.   Defendants have actively induced others to infringe claims of the '096 patent, including claims 1 and 14, in violation of 35 U.S.C. § 271(b) and Defendants continue to induce infringement even today.

92.   In developing their products, including at least Defendants' Shark AI-WD Robot product line, Defendants emulated and copied features of iRobot's robotic floor cleaning products., and upon information and belief, including those features claimed by the '096 patent. Use of such products along with Defendants' instructions, infringe the '096 patent.

93.   Defendants knew that iRobot had patents covering its robotic floor cleaning product lines and methods of use thereof. Shark has previously admitted to monitoring the issuance of iRobot patents (*see e.g.*, Transcript of Markman Hearing, iRobot Corp. v. SharkNinja Operating, 19-cv-12125, at 24:21), and upon information and belief, either learned of the '096 patent or subjectively believed there was a high probability that iRobot had patents covering the method of use of its robotic floor cleaning products but took deliberate actions to avoid learning of that fact.

94.   Despite knowing of the '096 patent or being willfully blind to the '096 patent, Defendants continued to make, use, sell, offer to sell, and/or import infringing products and products capable of infringing.

95.   Defendants have been and are continuing to encourage other persons (e.g., distributors, manufacturers, customers, and end users) to directly infringe the '096 patent with

knowledge (or willful blindness) of that infringement, such as by making, advertising, selling, offering to sell, supporting, distributing, and using Defendants' products including the Shark AI-WD Robot in a way that infringes the '096 patent.  These other persons directly infringe the '096 patent.

96.     Defendants provide their customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals that depict and describe the infringing features of the Shark AI-WD Robot (Exs. 33-39).

97.     Use of the Shark AI-WD Robot, in the manner depicted and described in the materials noted in the preceding paragraph infringes the '096 patent.

98.     iRobot has suffered and will continue to suffer irreparable harm by Defendants' infringement of the '096 patent unless the court permanently enjoins Defendants from their activities.  iRobot is also entitled to recover damages from Defendants as a result of their infringement of the '096 patent.

99.     Due to Defendants' willful and deliberate infringement, the Court should award iRobot up to treble damages under 35 U.S.C. § 284 for infringement of the '096 patent.

## PRAYER FOR RELIEF

WHEREFORE, iRobot prays for relief and judgment against Defendants as follows:

A.  That Defendants have infringed one or more claims of the '511 patent, the '423 patent, the '007 patent, the '517 patent, and the '096 patent under 35 U.S.C. § 271;

B.  A permanent injunction against Defendants and their officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all parent and subsidiary entities, all assignees and successors in interest, and all others acting in concert or participation with Defendants or any of the foregoing persons from further

infringement of the '511 patent, the '423 patent, the '007 patent, the '517 patent, and the '096 patent;

C. An award to iRobot of damages under 35 U.S.C. § 284 for the infringement of the '511 patent, the '423 patent, the '007 patent, the '517 patent, and the '096 patent by Defendants, together with pre-judgment and post-judgment interest and costs;

D. An award to iRobot of treble damages under 35 U.S.C. § 284 for the willful infringement of the '511 patent, the '423 patent, the '007 patent, the '517 patent, and the '096 patent by Defendants;

E. A finding that, with respect to Defendants, this case is exceptional, and awarding to iRobot its reasonable attorney fees under 35 U.S.C. § 285;

F. Judgment against Defendants on all counts of this Complaint; and

G. Such other relief for iRobot that the Court sees as just.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, iRobot demands trial by jury in this action of all issues so triable.

Date:  January 28, 2021      Respectfully submitted,

*/s/ Timothy H. Madden*
Peter E. Gelhaar (BBO#188310)
peg@dcglaw.com
T. Christopher Donnelly (BBO#129930)
tcd@dcglaw.com
Timothy H. Madden (BBO#654040)
thm@dcglaw.com

DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street
Suite 1600
Boston, MA 02110
Telephone:  (617) 720-2880
Facsimile:  (617) 720-3554

Gregg F. LoCascio, P.C. (*pro hac vice*)
gregg.locascio@kirkland.com
Anders P. Fjellstedt (*pro hac vice*)
anders.fjellstedt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5000
Facsimile:  (202) 389-5200

*Counsel for Plaintiff*
*iRobot Corporation*